**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

ANA DILIA VALDEZ HERNANDEZ

VS.

BRIAN ACUNA, ET AL.

CIVIL ACTION NO. 26-1613

SECTION P

JUDGE JERRY EDWARDS, JR.

MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Petitioner Ana Dilia Valdez Hernandez,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition.  [doc. # 6].  For reasons below, the Court should grant habeas corpus on the basis of Petitioner's procedural due process claim.

## Background

Petitioner is a citizen of Honduras.  [doc. # 1, p. 2].  She entered the United States of America on approximately June 7, 2019.  *Id.*  "She was apprehended by immigration officials, detained briefly, placed in formal removal proceedings, and released on June 9, 2019, on her own recognizance through Form I-220A."  *Id.*  "Petitioner then remained in the United States for years, complied with the conditions of her release, and pursued her immigration case."  *Id.*

---

[1] Petitioner's 'A-Number' is 203-812-486.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

"On April 28, 2026, Petitioner was detained by state troopers in Georgia and promptly transferred into ICE custody."  [doc. # 1, p. 2].

Petitioner filed this proceeding on May 15, 2026.  [doc. # 1].  She first claims: "She faces unlawful detention because Respondents re-detained her after years of release on recognizance without any predeprivation hearing, without any neutral determination that material changed circumstances justified her re-detention, and without any individualized bond hearing."  *Id.* at 1, 8, 14.  She maintains: "Respondents provided Petitioner no pre-deprivation hearing, no neutral review, and no changed-circumstances determination.  Her re-detention therefore violates procedural due process."  *Id.* at 10.

Petitioner next claims that her "continued detention violates substantive due process because it serves no lawful civil purpose."  [doc. # 1, pp. 10, 15].

Next, Petitioner claims that her re-detention "without changed circumstances" violated the Administrative Procedure Act.  [doc. # 1, pp. 12, 15].

Petitioner also claims that 8 U.S.C. § 1226, "not § 1225(b)(2)(A), governs detention of noncitizens who previously entered the United States, were released, were placed in formal removal proceedings, and were later re-detained in the interior."  [doc. # 1, pp. 13, 15].

Finally, Petitioner claims that the Government's "refusal to provide [her] a bond hearing violates" 8 C.F.R. §§ 236.1, 1003.19, and 1236.1.  [doc. # 1, p. 16].

Respondents opposed the petition on June 22, 2026.  [doc. # 6].  Petitioner filed a reply on June 24, 2026.  [doc. # 7].

Petitioner's "next master calendar hearing is currently scheduled for August 5, 2026[.]" [doc. # 6, p. 2].

## <u>Law and Analysis</u>

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted).

### A. Liberty Interest

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]" U.S. CONST. AMEND. V.   "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

In *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972), the Supreme Court held that the requirements of procedural due process applied to parole revocations.  The Court first noted that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* at 482.  Buttressing the parolee's interest in liberty is the society's interest "in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole" and its interest "in treating the parolee with basic fairness." *Id.* at 484.

The Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments

3

of normal life." *Id.* at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.*

Here, Petitioner's release on recognizance was similar to the parole described in *Morrissey*. Her release allowed her—with the Government's explicit permission—the freedom to live in the United States. Thus, the undersigned finds that Petitioner has a protected liberty interest in her release.[3]

Immigration officials released Petitioner subject to certain conditions. *Id.* This was an "implicit promise" that her release would "be revoked only if she fail[ed] to live up to the [release] conditions," like in *Morrissey*. *See* 408 U.S. at 482. As other courts have held, "[w]hen a person [is released from custody and] lives in society at large for years, [reasonably believed that the law required his release], and only then faces re-incarceration on the ground that he was [erroneously] released, the prospect of re-incarceration has implications both for him and the other individuals in his life as substantial as those of the parolee in *Morrissey*." *Hurd*, 864 F.3d at 682. And as another court observed, "Even if § 1225(b)(1) *did* apply, petitioner has a

---

[3] *See, e.g., O.F.C. v. Almodovar*, 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026) ("Both immigration parolees and those released on immigration bond are free to live their lives in this country and to form the . . . enduring attachments of normal life. . . . While released on bond, Petitioner was able to resume his life with his U.S.-citizen wife and his young U.S.-citizen children (one of whom was born while Petitioner was released). . . . The Court has little difficulty concluding that if the Government wishes to strip Petitioner of that liberty and these attachments, it must do so in a manner consistent with due process.") (internal quotation marks, quoted source, and record citation omitted).

protected liberty interest based on the government's prior representation to him in the order of release on recognizance that his release was pursuant to § 1226." *J.C.L.A. v. Wofford*, 2025 WL 2959250, at *4 (E.D. Cal. Oct. 17, 2025).

More importantly, procedural due process dictates that before Respondents re-arrest Petitioner, she be afforded notice and the opportunity to at least address Respondents' contentions surrounding her re-detention. "[D]ue process does not hinge on whether one has a winning argument, a colorable argument, or any argument at all." *Aurecchione v. Falco*, 2023 WL 6255529, at *12 (S.D.N.Y. Sept. 25, 2023) (citing *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be 'at a meaningful time and in a meaningful manner.'")). The two issues— procedural due process and the statutory interpretation of Sections 1225 and 1226 as addressed in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026)—overlap but are distinct. Even assuming Petitioner is detained under Section 1225 and subject to mandatory detention under the statute, her statutory and regulatory statuses do not foreclose her procedural due process claim.[4]

**B.** *Mathews* **Factors**

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens

---

[4] *See Marceau v. Noem*, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026) ("Marceau's constitutional interest in her liberty exists above and apart from the Immigration and Nationality Act and attendant regulations.") (citing *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025)).

that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, the first factor above militates in favor of Petitioner as freedom from bodily restraint is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 259 (2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).  To reiterate, "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

Petitioner established a liberty interest worthy of procedural protection when, with the Government's express permission, she exercised her freedom for almost seven years before the Government re-arrested her.   Respondents allowed Petitioner to establish her life in this country. Terminating her valued liberty likely inflicted a grievous loss.  *See generally Lopez Miranda v. Flores*, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) (holding that "noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status.").[5]

Next, the second factor above—the risk of an erroneous deprivation of such interest through the procedures used—weighs in Petitioner's favor because the Government did not offer

---

[5] Even assuming *arguendo* that Petitioner's time living in the United States was insufficient to create a cognizable liberty interest (it was not), Respondents provided her with a liberty interest when they released her from custody.  It is well established that once the government opts to provide a liberty or property interest, it cannot arbitrarily revoke this benefit without due process of law.  *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (holding in the context of "good-time credits" for prisoners that "a person's liberty is equally protected [by the due process clause], even when the liberty itself is a . . . creation of the State"); *Morrissey*, 408 U.S. at 482 (noting "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others"); *Graham v. Richardson*, 403 U.S. 365, 374 (1971) (rejecting the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right" or as a "privilege").

Petitioner any procedure before re-detaining her. The risk of erroneous deprivation of her liberty interest is obvious where there is no pre-detention process to determine if, for instance, her circumstances have changed.

The third factor—the Government's interest, including any fiscal and administrative burdens that the additional or substitute procedural requirement would entail, if any—likewise weighs in Petitioner's favor. There is nothing before the Court demonstrating a governmental interest in continuing to detain Petitioner. While the Government has an interest in protecting the community and preventing flight, ICE already determined at least implicitly when it released Petitioner that she was not a flight risk or a danger to the community. Further, Petitioner complied with all conditions of release. But even if concerns of flight or protecting the community were present (nothing of record indicates that they are), the parties can address them at a pre-deprivation hearing.[6] Finally, Respondents do not identify any fiscal or administrative burden in providing additional or substitute process.[7]

Because all the factors support Petitioner, the Court should find that the Government violated her right to procedural due process under the Fifth Amendment to the United States

---

[6] *See Lopez-Arevelo*, 801 F. Supp. 3d at 687 ("[I]f such concerns exist, they would be squarely addressed if the Court were to grant the petition and order a bond hearing.").

[7] *See generally Alvarez Rico,* 2026 WL 522322, at *6 (S.D. Tex. Feb. 25, 2026) ("Indeed, given the high costs of detention, the fiscal and administrative burdens of providing noncitizens in these circumstances with some form of hearing pales in comparison with the burdens of re-detaining thousands of noncitizens who were previously released on recognizance."); *J.C.L.A.*, 2025 WL 2959250, at *7 ("[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." (internal quotation marks and quoted sources omitted).

Constitution.  Moreover, given the weight of the liberty interests at stake and the fact that a custody determination already occurred, immediate release is the appropriate remedy. *See Alvarez- Rico* 2026 WL 522322 at *6 (immediate release); *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 498 (E.D.N.Y. 2025) (ordering immediate release where the petitioner was re-detained "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("Indeed, given the nature of the constitutional violation [petitioner] sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment *before* [re-]detaining him—any post-deprivation review by an immigration judge would be inadequate.").

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)) (internal quotation marks omitted). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has

8

held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . . ").[8]

Accordingly, the Court should order Petitioner's immediate release in accordance with the terms and conditions of her prior release and prohibit her re-detention unless and until she receives pre-deprivation process, i.e., meaningful notice of re-arrest[9] and a hearing which shall also include a meaningful opportunity to be heard and an opportunity to respond to any of the Government's reasons and asserted grounds for her re-arrest before detaining her again.[10]

---

[8] *But see James Daniel Good Real Prop.*, 510 U.S. at 59-61 ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

[9] The undersigned uses "re-arrest" and "re-detention" interchangeably in this Report and Recommendation.

[10] *See, e.g.*, *Martinez*, 2025 WL 2965859, at *4 (granting procedural due process claim even where the petitioner established a life in the United States *without* government authorization) (citing other similar cases); *Diallo v. Trump*, 1:25-cv-2012 (W.D. La. March 5, 2026); *Alvarez-Rico*, 2026 WL 522322, at *7 ("Respondents' re-detention of Alvarez-Rico without a pre-detention showing (or even allegation) of a change in his circumstances violated Alvarez-Rico's procedural due process rights."); *Lopez-Arevelo*, 801 F. Supp. 3d at 674; *Marceau*, 2026 WL 368953, at *2 (collecting similar cases and similar dispositions); *J.C.L.A.*, 2025 WL 2959250, at *1 (finding, where the petitioner was released on his own recognizance in August 2024, and re-arrested in September 2025, that the petitioner was likely to succeed on the merits of his procedural due process claim because he had a protected liberty interest in release); *Guillermo M. R. v. Kaiser*, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); *Vilela v. Robbins*, 2025 WL 3101334, at *6 (E.D. Cal. Nov. 6, 2025) ("Petitioner had been out of custody for nearly a year, and during that time, lived with her sister, worked, and developed ties to the community. Her detention denies her that freedom."); *Lnu v. Bondi*, 2026 WL 395290, at *7 (W.D. Wash. Feb. 12, 2026).

## <u>Recommendation</u>[11]

For the reasons above, **IT IS RECOMMENDED** that Petitioner Ana Dilia Valdez Hernandez's request for habeas corpus be **GRANTED**.  Respondents, and the warden of South Louisiana ICE Processing Center, shall (A) **immediately release** Petitioner from custody in accordance only with the terms and conditions of her prior release on recognizance, without any additional bond requirements or new conditions, and (B) notify Petitioner's counsel of the exact location and time of her release no less than two hours before her release.

**IT IS FURTHER RECOMMENDED** that Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner unless and until she receives pre-deprivation process, including: (I) meaningful advance notice of the intent to re-detain her; and (II) a hearing at a meaningful time which shall also provide Petitioner a meaningful opportunity to be heard and a right respond to any of the Government's reasons and asserted grounds for her re-arrest before detaining her again.

**IT IS FURTHER RECOMMENDED** that Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming her release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen**

---

[11] The undersigned finds no need to address any claim or request for relief not addressed herein.

**(14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 26th day of June, 2026.

_____
Kayla D. McClusky
United States Magistrate Judge